UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| CARLOS PALMA | CIVIL ACTION NO.  6:22-CV-01295 |
| VERSUS | JUDGE DEE D. DRELL |
| KILOLO KIJAKAZI | MAGISTRATE JUDGE DAVID J. AYO |

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, and for the reasons set forth below, it is recommended that the Commissioner's decision should be REVERSED and that this matter be REMANDED to the Administrative Law Judge for further consideration in light of the new evidence not previously considered.

## Administrative Proceedings

Claimant Carlos Hernan Palma, Jr., fully exhausted his administrative remedies before initiating this action.  Claimant filed an application for disability insurance benefits, alleging disability beginning on December 15, 2017. (Rec. Doc. 9-1 at 173).  His applications were denied initially and on reconsideration. (Rec. Doc. 9-1 at 106).  He then requested a hearing, which was held on July 27, 2021, before Administrative Law Judge Steven M. Rachal.[1]  The ALJ issued a decision on August 5, 2021, concluding that Claimant was not disabled within the meaning of the Social

---

[1] A transcript of the hearing is found in the record at Rec. Doc. 9-1 at 46. The hearing was held via telephone due to the COVID-19 pandemic.

Security Act from his alleged disability onset date through the date of the decision. (Rec. Doc. 9-1 at 27). Claimant asked the Appeals Council to review the ALJ's decision and submitted additional medical evidence, but the Appeals Council found no basis for review. (Rec. Doc. 9-1 at 5). Therefore, the ALJ's decision became the Commissioner's final decision for the purpose of the Court's review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant now seeks judicial review of the Commissioner's decision.

## Summary of Pertinent Facts

Claimant was born on March 14, 1967. (Rec. Doc. 9-1 at 173). He was 50 years old on the alleged disability onset date and 54 years old at the time of the ALJ's decision. He completed the eighth grade and has relevant work experience as a fence erector, a pipeline technician, a construction worker, and a dock worker. (Rec. Doc. 9-1 at 36). He alleged that he has been disabled since December 15, 2017 (Rec. Doc. 9-1 at 173) due to type II diabetes mellitus, arthritis in the lower back, coronary artery disease, problems with blood flow in the lower extremities, and hypertension. (Rec. Doc. 9-1 at 34).

The pertinent medical records in the record at the time of the ALJ's decision reveal the following medical history:

- **INSURANCE STATUS**: It appears claimant had Healthy Blue – AMRG insurance (insurance for Medicaid) from 9/1/2018 – 1/1/2020 and was uninsured before and after this time. (Rec. Doc. 9-1 at 285, 497). Claimant testified that in 2020 his Medicaid was denied because his "wife made $200.00 too much" and so he lost his insurance coverage. (Rec. Doc. 9-1 at 57).

- **Cardiovascular Institute of the South 2/12/2019, 2/27/2019, 3/20/2019, 3/29/2019, 6/17/2019, 7/5/2019, 7/25/2019:** Diagnosed with lumbar

Page 2 of 20

radiculopathy, intervertebral disc degeneration, polyneuropathy, hip osteoarthritis, diabetes mellitus type II, hypertension and peripheral artery disease of both legs, right leg pain, and left-hand paresthesia. An angiogram to determine blockage was scheduled to be performed at Lafayette General. A stress test was also performed. (Rec. Doc. 9-1 at 332-363, 451-482).

- **Lafayette General:**
  <u>3/27/2019</u> - An ultrasound, angiogram and angioplasty were performed to determine blockage and to place stents to address blockage. (Rec. Doc. 9-1 at 285-334).

- **South Care Medical (designated as a rural health clinic or RHC)[2]:**
  <u>10/5/2018</u> - Claimant sought treatment for hip pain with radiating pain in upper leg and back pain. Dr. Budi Sugeng prescribed Gabapentin. (Rec. Doc. 9-1 at 412).
  <u>12/4/2018</u> - X-ray of lumbar spine was ordered for lumbar pain. Gabapentin was discontinued because it was not tolerated well. (Rec. Doc. 9-1 at 411).
  <u>1/29/2019</u> - Claimant complained of chronic hip and back pain that worsens with ambulation. Dr. Anita Deborah noted that the X-ray did not show a cause for pain and that a magnetic resonance imaging scan ("MRI") of the lumbar spine "is needed to rule out nerve involvement." She further noted Claimant was not responding to conservative treatment or physical therapy but that she would try new medication. (Rec. Doc. 9-1 at 408, 409).
  <u>2/28/2019</u> - Claimant continued complaints of pain in hips radiating to legs. Examination revealed hip tenderness. MRI was denied by insurance company, but Dr. Deborah stated she will try another medication and if pain persists appeal for MRI. (Rec. Doc. 9-1 at 406, 407).
  <u>5/24/2019</u> - Claimant complained of lower extremity weakness and severe back pain which prevented walking. Dr. Deborah noted that Claimant tried physical therapy and took non-steroidal anti-inflammatory drugs and/or muscle relaxants for six weeks with no improvement. She stated that he

---

[2] A "rural health clinic" means a "facility which is engaged in furnishing primary health services to outpatients by physicians, physician assistants or nurse practitioners, including but not limited to health services related to family medicine, internal medicine, pediatrics, obstetrics, and gynecology and such services and supplies incident thereto. Such facility shall be located in an area that is not an urbanized area, as defined by the Bureau of the Census, in which there are insufficient numbers of needed health care practitioners, as determined by the secretary of the Louisiana Department of Health, and which has been determined to be a rural health clinic by the secretary of said department under 42 U.S.C. 1395aa(a)." La. R.S. 40:2197. https://ldh.la.gov/index.cfm/directory/category/326

The doctors and medical providers who signed Claimant's medical record at SouthCare bear the designation "RHC" after their signatures.

"needs MRI of the lumbar spine to rule out nerve involvement." (Rec. Doc. 9-1 at 397-399).

<u>6/18/2019</u> - Dr. Deborah noted that the MRI she ordered was again denied. Claimant reported pain in his arm which the cardiologist said was unrelated to his heart. He also complained of pain in neck, lower back, and weakness in his leg and "occasionally feeling like he is ready to give up." Dr. Deborah stated again that he had tried physical therapy by self-pay, and it worsened his condition, that conservative treatment did not work and that he was willing to have surgery as his condition is worsening. She ordered an X-ray of his neck for the new complaints and again stated his need for an MRI. (Rec. Doc. 9-1, at 395, 396).

<u>11/13/2020</u> - Dr. Simone Pitre - Claimant sought treatment for pain in lower legs and back and stated that he had stopped taking all medication but needed medication. Dr. Pitre noted spondylosis and radiculopathy of the cervical region and other intervertebral disc degeneration and radiculopathy of the lumbar region. She referred him to an orthopedist and prescribed gabapentin at night. (Rec. Doc. 9-1 at 525, 527, 529).

<u>4/26/2021</u> - Dr. Budi Sugeng - Claimant complained of back and neck pain. Dr. Sugeng ordered an MRI for which Claimant would self-pay.

<u>5/6/2021 and 5/10/2021</u> - Examinations by Dr. Budi Sugeng. Claimant diagnosed with spinal stenosis of cervical region, cervical disc displacement of cervical region, other spondylosis of the cervical region, radiculopathy of the cervical and lumbar regions, intervertebral disc displacement and degeneration of lumbar region, left shoulder pain, hypertension, diabetes mellitus type II, dorsalgia, hyperlipidemia, polyneuropathy. (Rec. Doc. 9-1 at 507-513).

<u>5/10/2021 - Treating Source Statement</u> - After reviewing MRIs of lumbar and cervical region and treating claimant for cervical pain, lumbar pain and shoulder pain, Dr. Sugeng found him likely to be off task for 25% of a typical workday and likely to be absent for more than 4 days in a month as a result of the impairment and/or treatment. He found that claimant can sit for 3 hours and stand/walk for 2 hours in an 8-hour workday due to cervical and lumbar problems showing bulging disc and canal stenosis. (Rec. Doc. 9-1 at 438-445).

- **Envision Imaging:**

<u>MRI of lumbar spine</u> 5/6/2021 - Report by Dr. F. Michael Hindelang to evaluate chronic low back pain which is progressing. The report noted small central canal secondary to short pedicles, central canal stenosis at L1-L2, L2-L3, L3-L4 secondary to disc bulge and hypertrophy, grade 1 retrolisthesis at L2-L3, L3-L4, L4-L5 and L5-S1, bilateral foraminal stenosis, and disc space narrowing at L4-L5 and L5-S1. (Rec. Doc 9-1 at 531-533).

<u>MRI of cervical spine 5/7/2021</u> - Report by Dr. Hindelang to evaluate chronic neck pain and bilateral shoulder pain which is progressing. The report noted compression deformities at C7 and T1, left paracentral disc

protrusion/herniation and ligamentum flavum hypertrophy at C3-C4 resulting in central canal stenosis, left/right foraminal stenosis at C3-C4, C4-C5, C5-C6, C6-C7 and T1-T2, and central canal stenosis at C5-C6 secondary to posterior disc bulge. (Rec. Doc. 9-1 at 535-536).

On July 27, 2021, Claimant testified at a hearing regarding his symptoms and stated that because of the heavy nature of his work, he frequently suffered aches and pains in his back, but it "started hurting more in '17 and '18 where I couldn't walk anymore.... And it got so bad that I had to stop working...." (Rec. Doc. 9-1 at 50). He further stated that his back became a medical issue while working for Acadiana Contractors when he suffered an injury while picking up pipe.[3] (Rec. Doc. 9-1 at 57). Claimant sought treatment from the physicians that Acadiana Contractors sent him to, but after X-raying his back, they were unable to find the source of Claimant's back pain. In 2018, Claimant obtained Medicaid benefits and sought treatment at SouthCare Medical. The physicians told him he needed MRIs of his lower back and neck because an X-ray would not show the problem, but Medicaid denied the requests for those procedures. In early 2020, he lost his Medicaid insurance. In 2021, he used his CARES Act[4] stimulus benefits to pay for MRIs of his lower back and neck in Shreveport, Louisiana. (Rec. Doc. 9-1 at 56-58).

Claimant further testified that he can only stand for 10 to 15 minutes at a time, can only sit for 20 to 30 minutes at a time, and that he cannot bend down to pick

---

[3] Although it is unclear from his testimony at the hearing when he worked at Acadiana Contractors, the report issued by Dr. Miller which is part of the new evidence Claimant submitted to the Appeals Council states that it was in 2013. (Rec. Doc. 9-1 at 19).

[4] Coronavirus Aid, Relief, and Economic Security Act.

something up. (Rec. Doc. 9-1 at 58-65). In the Disability Function Report that he completed on July 19, 2020, he reported that he had applied for work for the past few years but could not pass the physical examinations. He further stated that he awakes with "extreme back pain which makes it difficult" for him to get out of bed and caused mobility issues which prevented him from seeking employment. (Rec. Doc. 9-1 at 223).

On appeal, Claimant submitted a medical source statement from SouthCare Medical, LLC dated August 23, 2021 (Rec. Doc. 9-1 at 22-26). The Appeals Council found that the evidence "does not show a reasonable probability that it would change the outcome of the decision" and did not exhibit this evidence. He also submitted a medical source statement from Ronald Miller, M.D. dated October 18, 2021. Since the ALJ decided the case through August 5, 2021, the Appeals Council found that the additional evidence "does not relate to the period at issue and does not affect the decision about whether claimant was disabled beginning on or before August 5, 2021." (Rec. Doc. 9-1 at 6).

Claimant now seeks reversal of the Commissioner's adverse ruling.

## **Standard of Review**

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez, supra.* A court must carefully examine the entire record but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

### **Determination of Disability**

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). *See also Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). A person is disabled "if he is unable to engage

Page 7 of 20

in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past

relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### ALJ's Findings and Conclusions

The ALJ made the following findings:

- At step one that Claimant meets the insured status requirements of the Social Security Act through September 30, 2022. (Rec. Doc. 9-1 at 32). This finding is supported by substantial evidence in the record.

- At step two, that Claimant has the following severe impairments: type II diabetes mellitus, peripheral artery disease, degenerative disc

- disease, hypertension, and obesity. *Id.* This finding is supported by substantial evidence in the record.

- At step three, that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. *Id.* Claimant does not challenge this finding.

- The ALJ next found that the claimant has the residual functional capacity to perform the full range of medium work. *Id.* Claimant challenges this finding.

- At step four, that Claimant is not capable of performing any past relevant work. *Id.* Claimant does not challenge this finding.

- At step five, that claimant was not disabled from May 30, 2018, through February 26, 2021 (the date of the decision) because there are jobs in the national economy that she can perform. *Id.* Claimant challenges this finding.

Considering the evidence in the record at the time, the ALJ noted that Dr. Sugeng had reviewed the MRI scans of the lumbar and cervical regions[5] and found that these conditions would cause Claimant's back and leg pain. However, the ALJ found that recent treatment records relative to his degenerative disc disease

---

[5] The ALJ noted that the MRI scans showed "intervertebral disc displacement in the lumbar region…, as well as left paracentral disc protrusions/herniation and ligamentum flavum hypertrophy with mild to moderate central canal stenosis at C3-4, mild to moderate right and mild left foraminal stenosis secondary to facet hypertrophy and disc/osteophyte complex, a posterior disc bulge with mild central canal stenosis at C5-6, mild bilateral foraminal stenosis at T1-T1, and mild compression deformities at C7 and T1." (Rec. Doc. 9-1 at 34).

Page 10 of 20

suggested few limitations with most imaging demonstrating only "mild" problems, although some were moderate or moderate to severe. He noted that despite assertions of "extreme" pain, Claimant was not hospitalized for pain. In fact, citing an appointment on December 12, 2018, the ALJ noted that "upon physical examination he had full range of motion and no tenderness [,]" (Rec. Doc. 9-1 at 411) and that he had "fairly benign" objective findings upon clinical testing.[6] The ALJ further noted that Claimant alleged that pain medication had provided no significant improvement in his pain level and that at one point he had quit taking them altogether because "they were making him sick."[7] For these reasons, the ALJ found Claimant's statements about the intensity, persistence, and limiting effects of his symptoms "inconsistent because the evidence does not support limitations of a disabling condition" and that Claimant could perform work at some level. (Rec. Doc. 9-1 at 35).

The ALJ further found the State agency medical consultant's opinions and Dr. Sugeng's opinions unpersuasive. Regarding the State agency's initial and

---

[6] The ALJ references Exhibit 35, p. 26 (Rec. Doc. 9-1 at 393) which corresponds to an appointment on August 21, 2019. There is no mention of the word "benign" on that page, however; on the June 18, 2019, an X-ray report denoted as incomplete states: "benign chronic condition, RTC [return to clinic] if not better." (Rec. Doc. 9-1 at 390). The Court is uncertain but assumes this is what the ALJ is referencing.

[7] It is unclear when and for how long Claimant stopped taking his medication. The ALJ states that in early 2019 Claimant reported that he quit taking his medications because they were making him sick but that he got back on them in January 2019, citing Exhibit 9F/43 (Rec. Doc. 9-1 at 521). This exhibit actually references an appointment on November 13, 2020, and notes:
> **Complaining Pain/Discomfort:** complaining of pain in his lower legs and back- also not taking any of his meds- off all meds stated they made him feel sick- so he just stopped them all- wanted to restart meds slowly and not to have as many meds.

*Id.*

reconsidered opinions, the ALJ found them unpersuasive because he found no limitations and impairment. The ALJ stated (1) that Claimant's impairments do cause pain and other symptoms, just not to the extent alleged and (2) that based on the entire evidence, the Claimant has severe impairments that limit him to medium exertional work.

The ALJ also found unpersuasive Dr. Sugeng' s opinion that Claimant could not engage in work activity on a regular and continuing basis. He noted that Dr. Sugeng found Claimant could

> continuously reach overhead, push/pull, work at unprotected heights, frequently work around moving mechanical parts, extreme heat or cold, on vibrations; occasionally operate a vehicle, and rarely work in humidity, dusts, odors, fumes, or other pulmonary irritants. He saw no limitation in climbing, stooping, kneeling, crouching, or crawling, and stated the claimant could frequently balance and rotate his head and neck. He noted that MRI scan showed the claimant had disc bulging and canal stenosis, but the claimant could still frequently and continuously perform activities with the right hand.

(Rec. Doc. 9-1 at 36 citing Exhibit 7F (Rec. Doc. 9-1 at 443-445)). The ALJ found that while the opinion contained a whole range of limitations, including off-task behavior, short attention span, and excessive absences, in addition to exertional limitations likely consistent with a range of work between light and sedentary, "none of these limitations were consistent with or supported by his treatment records or any other treatment records or opinion evidence." (Rec. Doc. 9-1 at 36).

## **Allegations of Error**

1. Whether the Appeals Council erred in failing to find that records submitted after the ALJ's decision created a reasonable probability of changing the outcome of the decision?
2. Whether the ALJ erred by failing to articulate the level of "supportability" and "consistency" of the medical opinion of Dr. Sugeng pursuant to the requirements of 20 C.F.R. § 404.1520c?
3. Whether the ALJ Did Not Evaluate the Plaintiff's Subjective Complaints Pursuant to SSR 16-3p?

## Analysis

Claimants are free to submit new evidence to the Appeals Council. 20 C.F.R. § 404.968(a). Such evidence is considered part of the record upon which the Commissioner's final decision is based. *Higginbotham v. Bernhard*, 405 F.3d 332, 337 (5th Cir. 2005). The district court must examine all of the evidence, including the new evidence, to determine whether the Commissioner's final decision to deny a claim is supported by substantial evidence. *Sun v. Colvin*, 793 F.3d 502, 510 (5th Cir. 2015). Newly submitted evidence is material if (1) it relates to the time period for which the disability benefits were denied; and (2) there is a reasonable probability that it would have changed the outcome of the disability determination. *Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003) (per curiam); 20 C.F.R. § 404.970(a)(5). "[T]he new evidence must also pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling." *Leggett v. Chatter*, 67 F.3d 558, 567 (5th Cir. 1995). When the new evidence does not relate to the contested time period or concerns a subsequently acquired disability, the proper action is to file a new application for disability benefits based on the new condition. *Id*. When additional evidence is presented to and considered by the Appeals Council, the evidence becomes part of the administrative

record, and a reviewing court must determine whether the denial of benefits remains supported by substantial evidence. *See Schofield v. Saul*, 950 F.3d 315, 322 (5th Cir. 2020); *Whitehead*, 820 F.3d at 780; *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005).

However, "even when new and material evidence submitted to an Appeals Council is 'significant' and 'casts doubt on the soundness of the ALJ's findings,' the Appeals Council does not err in refusing to review the claimant's case if it can be determined that substantial evidence nevertheless supports the ALJ's denial of benefits." *Hardman v. Colvin*, 820 F.3d 142, 151 (5th Cir. 2016) (citing *Sun v. Colvin*, 793, F.3d 502, 511-12 (5th Cir. 2015)). There must be a reasonable possibility that the evidence would have changed the outcome of the Commissioner's determination. *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

After the ALJ issued his decision denying benefits in this case, Claimant submitted new evidence which the Appeals Council declined to consider. Claimant asserts that the ALJ erred in failing to find that the records submitted after the ALJ's decision created a reasonable probability of changing the outcome of the decision. As discussed below, Claimant submitted a Treating Source Statement from Dr. Roland Miller and a clarified Treating Source Statement from Dr. Sugeng.

(1) <u>Treating Source Statement from Dr. Ronald Miller</u>

On October 18, 2021, Dr. Roland Miller, an orthopedic surgeon, performed a one-time examination of Claimant, completed a Treating Source Statement, and provided a four-page report documenting his findings and Claimant's medical history.

Dr. Miller noted that Claimant reported that his cervical and lumbar pain was at a level 7 out of 10 and that he "tries not to use any type of Narcotics and uses ibuprofen or Aleve on a regular basis." (Rec. Doc. 9-1 at 17). Regarding the cervical spine Dr. Miller reported "good flexion but almost no extension, he has tenderness, radicular pain into the interscapular area, and numbness when raising his arms over his head." (Rec. Doc. 9-1 at 18). On review of the imaging, Dr. Miller reported "[i]n general, I feel the patient has severe pain from this nerve pressure in the cervical spine and has neurogenic claudication as far as the movement of his arms above his shoulder level." *Id.* Regarding Claimant's lumbar spine, Dr. Miller noted it was tender to palpation, he had muscles spasms, decreased range of motion, and tenderness over the sciatic notches bilaterally and decreased sensation in the distal feet bilaterally. *Id.* With this examination and reviewing the imaging, Dr. Miller's impression was that Claimant has "severe central stenosis and severe neural foraminal stenosis at multiple levels of the lumbar spine accounting for the neurogenic claudication and numbness he gets in his legs with standing." *Id.* He further stated,

> [o]overall, I feel that this patient has worked hard, that he has mechanical problems with the lumbar and cervical spine having worn out with heavy manual labor for all his life, 37 years of manual labor and also motor vehicle accident at age 20 contributing. Overall, at this point, I feel he is permanently unable to perform any normal work duties. I feel that the problems he has, especially with the lumbar spine, is going to be progressive and more probable than not that he will need surgery in the future. I feel he is unable to perform even light duty work duties.

(Rec. Doc. 9-1 at 18, 19).

Page 15 of 20

The Commissioner argues that the Treating Source Statement and report are irrelevant because they were submitted over two months after the ALJ's decision and because Dr. Miller does not indicate that he reviewed any medical records other than one cervical and one lumbar MRI. The Commissioner further claims that Dr. Miller relied on Claimant's subjective statements of his condition years prior and the one-time examination he performed that same day and that "the MRIs Dr. Miller mentions are not clearly identified, with no indication of the date they were taken, further undercutting Claimant's claim that this new evidence relates to the relevant period based on these MRIs." (Rec. Doc. 15 at 8).

Upon review the Court finds it significant that Claimant's testimony and the medical records indicate that since January of 2019 Claimant had been trying to obtain MRIs because his doctors told him that X-rays could not show nerve impingement. At the time he was insured by Healthy Blue – AMRG, but the orders for the MRIs were continuously rejected. After January 2020, Claimant lost his insurance coverage. Claimant continued to treat at SouthCare and in November of 2020 he was referred to an orthopedist. The record does not reflect why he did not see an orthopedist at that time, but it does indicate that he was out of work and did not have insurance. Claimant obtained an order from Dr. Sugeng to self-pay for MRIs of his lumbar and cervical region and travelled to Shreveport to have them taken. The MRIs were taken May 6, 2021, more than two years after they were first requested by his doctor. (*See* Summary of Pertinent Facts, *supra*).

Dr. Sugeng, who is a specialist in pediatrics, reviewed the report from the MRIs and completed a Treating Source Statement on May 10, 2021. The record does not indicate why it took ten and half weeks for Claimant to be examined by Dr. Miller, whose specialty is orthopedics. But the Commissioner's suggestion that it is unclear which set of MRIs Dr. Miller reviewed is disingenuous. Claimant tried for years to get an MRI. When he was on Medicaid, the requests for MRIs were denied. Once he was denied Medicaid, he was not working and had no insurance to pay for MRIs. There is no suggestion that new MRIs were taken, and it is improbable that his condition about which he had been complaining and for which he sought treatment since 2018 significantly deteriorated in ten and a half weeks. Accordingly, the Court finds that the new evidence pertains to the contested time period and does not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling.

(2) <u>Treating Source Statement from Dr. Sugeng</u>

Although not addressed in Claimant's briefing, he also submitted as additional evidence an amended Treating Source Statement by Dr. Sugeng dated August 23, 2021, which explained that he had incorrectly filed out several portions of the form, namely the Lifting/Carrying, Use of Hands, and Postural Limitations section. For example, Dr. Sugeng had originally noted on the form that Claimant could continuously lift/carry, reach overhead, push/pull, work at unprotected heights, and climb stars and ramps, climb ladders and scaffolds, kneel, crouch, and crawl, but that he had meant to check the opposite, i.e., "never or rarely." (*See* Rec. Doc. 9-1 at 23-

27, 442-446). The Appeals Council stated that it "did not exhibit this evidence" because it found it "does not show a reasonable probability that it would change the outcome of the decision." (Rec. Doc. 9-1 at 6). Since the ALJ determined that Dr. Sugeng's opinion was unpersuasive, the ALJ's determination is understandable. However, as stated above, the ALJ quoted Dr. Sugeng's admittedly mistaken reporting that Claimant could continuously "reach overhead, push/pull, work at unprotected heights," and saw no limitation in climbing, stooping, kneeling, crouching, or crawling, and that Claimant could frequently balance and rotate his head and neck." While it may not have changed the outcome of the decision, it does clarify Dr. Sugeng's position.

The ALJ found the State agency doctor and Dr. Sugeng's opinions unpersuasive. He acknowledged that Dr. Sugeng's opinion contained a whole range of limitations but that "none of these limitations were consistent with or supported by his treatment records or any other treatment records or opinion evidence." (Rec. Doc. 9-1 at 36). He also noted that Claimant had never been hospitalized for the pain. However, as stated above, Claimant did not have insurance before September of 2018. When he got on Medicaid, he sought treatment. His doctors' requests for MRIs were denied on multiple occasions. He had no money to self-pay and no insurance, but in 2021 he paid for MRIs with his stimulus funds. The MRI reports that he obtained were reviewed by Dr. Sugeng and eventually by Dr. Miller. While the Court agrees that Dr. Sugeng was qualified to provide a treating source statement and to review the reports of the MRIs, the Court finds that a review by an orthopedic surgeon who

routinely reviews MRIs in conjunction with examining patients with back pain is beneficial in evaluating cervical and lumbar conditions.  Dr. Miller's report specifically finds that he feels that Claimant is "permanently unable to perform any normal work duties [,]" "having worn out with heavy manual labor for all his life, 37 years of manual labor and also motor vehicle accident at age 20 contributing." (Rec. Doc. 9-1 at 19).   The Court finds that there is a reasonable possibility that this evidence would have changed the outcome of the Commissioner's determination.

Accordingly, because the medical source statement from Dr. Ronald Miller submitted by Claimant pertains to the contested time period and does not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling and because there is a reasonable possibility that this evidence would have changed the outcome of the Commissioner's determination, the Court finds the Appeals Council erred in failing to consider this evidence and that this matter should be remanded to the ALJ for further proceedings.  Based on its conclusion that remand is necessary to consider the new evidence submitted on appeal, the Court does not reach the remaining issues that Claimant asserts on appeal.  However, the Commissioner should not assume that no error was found. Rather, on remand all of the evidence should be properly assessed in light of the new evidence submitted.

## Conclusion and Recommendation

For the reasons fully discussed above, this Court recommends that the Commissioner's decision be REVERSED and that this matter be REMANDED to the

ALJ for further consideration in light of the new evidence not previously considered. Upon remand, the ALJ shall consider, *inter alia*, the medical source statement from Dr. Ronald Miller in determining Claimant's eligibility for disability benefits.

\* \* \* \* \*

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[8]

Signed at Lafayette, Louisiana on this 21st day of September, 2023.

DAVID J. AYO
UNITED STATES MAGISTRATE JUDGE

---

[8] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).